UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN N.,[1] <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 5:24-cv-02023-JC <br><br> MEMORANDUM OPINION |

## I. SUMMARY

On September 20, 2024, Plaintiff filed a Complaint seeking review of the Commissioner of Social Security's denial of Plaintiff's application for benefits. On November 25, 2024, Defendant filed an Answer consisting of the Administrative Record ("AR").

This matter is before the Court on the parties' cross-briefs (respectively, "Plaintiff's Brief" and "Defendant's Brief") and Plaintiff's Reply.  The Court has taken this matter under submission without oral argument.  See SSA Supp. Rule 5; September 24, 2024 Case Management Order ¶ 4.

---

[1] Plaintiff's name is partially redacted to protect his privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On December 10, 2019, Plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI, alleging disability beginning on January 1, 2017, due to post-traumatic stress disorder, anxiety with agoraphobia and panic attacks, "[r]ule out multiple sclerosis," "[r]ule out secondary cancer possibly pancreas," and "[m]ini strokes." (AR 165-71, 198). The ALJ subsequently examined the medical record and, on September 2, 2021, heard testimony from Plaintiff (who was represented by counsel) and vocational expert Nelly Katsell. (AR 32-59). On December 2, 2021, the ALJ determined that Plaintiff has not been disabled since December 10, 2019, the application date. (AR 15-27). On March 16, 2022, the Appeals Council denied Plaintiff's application for review, making the ALJ's decision the final decision of the Commissioner. (AR 1-6).

Plaintiff then sought review in this Court on May 7, 2022. (AR 631-33; see C.D. Cal. Case No. 5:22-cv-0785-MEMF-JC, Docket No. 1). On November 7, 2022, pursuant to a stipulation of the parties, this Court remanded the matter to the Commissioner for further proceedings. (AR 637-39; see C.D. Cal. Case No. 5:22-cv-0785-MEMF-JC, Docket Nos. 17-18).

On remand, the ALJ held another hearing on September 19, 2023, receiving testimony from Plaintiff (still represented by counsel) and vocational expert Ronald Hatakeyama. (AR 585-604). On May 17, 2024, the ALJ again determined that Plaintiff was not disabled. (AR 565-79). Specifically, the ALJ found: (1) Plaintiff suffers from the following severe impairments: hypertension, chronic obstructive pulmonary disease ("COPD"), alcohol abuse disorder, pancreatitis,

anemia, hepatic encephalopathy, liver cirrhosis, polyneuropathy, gastroesophageal reflux disease, major depressive disorder, panic disorder, and anxiety disorder (AR 567); (2) Plaintiff's impairments, considered individually or in combination, do not meet or medically equal a listed impairment (AR 568); (3) Plaintiff retains the residual functional capacity ("RFC")[2] to perform light work (20 C.F.R. § 416.967(b)) with additional limitations[3] (AR 571); (4) Plaintiff has no past relevant work (AR 577); (5) Plaintiff can perform other work existing in significant numbers in the national economy, specifically office helper, retail pricer, and small products assembler (AR 577-78); and (6) Plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely consistent with the medical evidence and other evidence in the record (AR 575).

On July 26, 2024, the Appeals Council denied Plaintiff's application for review, making the ALJ's decision the final decision of the Commissioner. (AR 555-58).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

---

[2]A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 416.945(a)(1).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). The ALJ found Plaintiff (i) can frequently push and pull, balance, stoop, kneel, crouch, and crawl; (ii) cannot be exposed to extreme cold, extreme heat, dust, or chemicals; (iii) can understand, remember, and carry out simple, routine work tasks but not at a production rate pace (for example, no assembly line jobs); (iv) can tolerate occasional workplace changes; and (v) can have occasional interaction with coworkers and supervisors but no contact with the public. (AR 571).

1  months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42
2  U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by
3  regulation on other grounds as stated in Sisk v. Saul, 820 F. App'x 604, 606 (9th
4  Cir. 2020); 20 C.F.R. § 416.905(a).  To be considered disabled, a claimant must
5  have an impairment of such severity that he is incapable of performing work the
6  claimant previously performed ("past relevant work") as well as any other "work
7  which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098
8  (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

9       To assess whether a claimant is disabled, an ALJ is required to use the five-
10 step sequential evaluation process set forth in Social Security regulations.  See
11 Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006)
12 (describing five-step sequential evaluation process (citing 20 C.F.R.
13 §§ 404.1520, 416.920)).  The claimant has the burden of proof at steps one
14 through four – *i.e.*, determination of whether the claimant was engaging in
15 substantial gainful activity (step one), has a sufficiently severe impairment (step
16 two), has an impairment or combination of impairments that meets or medically
17 equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1
18 ("Listings") (step three), and retains the residual functional capacity to perform
19 past relevant work (step four). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir.
20 2005) (citation omitted).  The Commissioner has the burden of proof at step five –
21 *i.e.*, establishing that the claimant could perform other work in the national
22 economy.  Id.

23     **B.**   **Federal Court Review of Social Security Disability Decisions**

24      A federal court may set aside a denial of benefits only when the
25 Commissioner's "final decision" was "based on legal error or not supported by
26 substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871
27 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The
28 standard of review in disability cases is "highly deferential." Rounds v. Comm'r

4

of Soc. Sec. Admin., 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted).  Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision.  Trevizo, 871 F.3d at 674-75 (citations omitted).  Even when an ALJ's decision contains error, it must be affirmed if the error was harmless.  See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error (citation and quotation marks omitted)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance" (citation and quotation marks omitted)).  When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]"  Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely."  Trevizo, 871 F.3d at 675 (citations omitted).  Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review."  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record.  Id.  When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate.  See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV. DISCUSSION

Plaintiff claims that (1) the ALJ failed to consider Plaintiff's headaches at steps two and three and when determining Plaintiff's RFC; and (2) the ALJ's RFC assessment for light exertional work, which implies a six-hour standing/walking limitation, is not supported by substantial evidence. (See Plaintiff's Brief at 6-13; Plaintiff's Reply at 2-4). For the reasons stated below, Plaintiff has not shown that a reversal or remand is warranted.

### A. The ALJ Did Not Materially Err by Neglecting to Address Plaintiff's Headaches

#### 1. Applicable Law

At step two of the sequential evaluation process, a claimant must present evidence of "signs, symptoms, and laboratory findings"[4] which establish a medically determinable physical or mental impairment that is severe and, at least, has lasted or can be expected to last for a continuous period of at least twelve months. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(3)); 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii); see generally Bowen v. Yuckert, 482 U.S. 137, 148 (1987) (Secretary may deny Social Security disability benefits at step two if claimant does not present evidence of a "medically severe impairment"). As relevant here, a claimant may demonstrate a medically determinable impairment of a primary headache disorder, such as migraine

///

---

[4]"Your symptoms, such as pain . . . , will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present. Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(b); see also 20 C.F.R. § 416.921 (noting medically determinable impairments must be shown by medically acceptable clinical and laboratory diagnostic techniques; once shown, the Administration considers whether a claimant's impairments are severe).

headaches, only by satisfying the requirements of Social Security Ruling ("SSR") 19-4p, which explains what constitutes an acceptable diagnosis:

> In accordance with the [International Classification of Headache Disorders] guidelines, the World Health Organization (WHO) protocols, and the [National Institute of Neurological Disorders and Stroke] definition of headache disorders, physicians diagnose a primary headache disorder only after excluding alternative medical and psychiatric causes of a person's symptoms. Physicians diagnose a primary headache disorder after reviewing a person's full medical and headache history and conducting a physical and neurological examination. . . . [] To rule out other medical conditions that may result in the same or similar symptoms, a physician may also conduct laboratory tests or imaging scans.

SSR 19-4p, 2019 WL 4169635, at *4 (footnotes omitted).[5] The Ruling later provides:

> The evidence must document that the [acceptable medical source] who made the diagnosis reviewed the person's medical history, conducted a physical examination, and made the diagnosis of primary headache disorder only after excluding alternative medical and psychiatric causes of the person's symptoms.

Id. at *6.

A medically determinable impairment is deemed "severe" at step two if it significantly limits the physical or mental ability to perform basic work activities, 20 C.F.R. § 416.920(c), and it is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the

///

---

[5]Social Security Rulings "do not carry the 'force of law,' but they are binding on ALJs nonetheless." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009).

ability to do basic work activities," Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

At step three, as indicated above, the ALJ assesses whether Plaintiff's medically determinable impairments, alone or in combination, meet or medically equal any of the Listings. SSR 19-4p provides that Listing 11.02, for epilepsy, "is the most closely analogous" Listing for primary headache disorder. SSR 19-4p, 2019 WL 4169635, at *7. The Ruling states that, "[w]hile uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in [L]isting 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her [medically determinable impairment(s)] medically equals the listing." Id. As explained in SSR 19-4p, paragraph B of Listing 11.02 "requires dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment," while paragraph D requires "requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning." Id.

To assess whether a claimant is disabled at steps four and five of the sequential evaluation process, the ALJ must determine the claimant's RFC. As indicated above, a claimant's RFC "is what he [or she] can still do despite his [or her] physical, mental, nonexertional, and other limitations." Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989) (citing 20 C.F.R. § 404.1545); see also 20 C.F.R. § 416.945. In assessing a claimant's RFC, the ALJ is required to consider all of a claimant's impairments, whether or not they are severe, along with any related symptoms that may "cause physical and mental limitations that affect what [he] can do in a work setting." See 20 C.F.R. § 416.945(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' . . . when we assess your residual functional capacity."). The RFC itself,

however, need only include limitations and restrictions in the RFC that are attributable to medically determinable impairments, see SSR 96-8p, 1996 WL 374184, at *2, and it need not include any non-severe impairments found to cause no more than minimal limitations. See Woods v. Kijakazi, 32 F.4th 785, 794 (9th Cir. 2022).

### 2. Analysis

Plaintiff argues that the ALJ erred by neglecting to consider his headaches when assessing Plaintiff's severe impairments at step two, when considering whether Plaintiff's conditions meet or medically equal any Listings at step three, or when determining Plaintiff's RFC for steps four and five. (See Plaintiff's Brief at 6-8; Plaintiff's Reply at 2-3). Plaintiff contends that this was error due to the "impact that [his] headaches have had." (Plaintiff's Brief at 8). However, Plaintiff does not point to any diagnosis of a headache disorder, nor does he identify any evidence showing that his headaches occur often, are treated by a medical professional, or have caused any functional limitations.

The record contains few references to headaches. Plaintiff's disability report in support of his application notably did not allege headaches or migraines among the medical conditions that limit his ability to work (see AR 198), though it did mention that Plaintiff "has panic attacks that cause[] [his] arms and legs to go numb and result[] in migraine headaches" (AR 202). That allegation suggests that Plaintiff may have experienced headaches merely as a consequence of his mental health conditions, such as his panic and anxiety disorders, which the ALJ found to be severe impairments at step two and subsequently considered when assessing Plaintiff's RFC. (See AR 567, 573-75).

Plaintiff disputes this impression, asserting that the record "contains ample evidence of [Plaintiff's] headaches independent of panic attacks." (Plaintiff's Brief at 7). Yet, the evidence Plaintiff cites is by no means ample or clear on this issue. In August 2019, for example, Plaintiff told one medical provider, Dr.

Indermohan Luthra, M.D., he "has pressure in his head," and it "is a pulsatile pressure every day."[6] (AR 535; see also AR 527, 531).  In that same note, Plaintiff further "describe[d] that he has chronic pain in his neck [that] travels down to the spine, [and] feels like a sharp through [sic] the head and neck and goes to the leg." (AR 535).  The nature, cause, or extent of these reported symptoms is unclear, however.  Dr. Luthra recommended a brain MRI (AR 537), which Plaintiff received two months later, in October 2019 (AR 539-40), but the findings were generally normal and "unremarkable," aside from some "[m]ild involutional changes of the cerebral hemispheres" along with "[a] few scattered small patches of T2 prolongation" in the "bilateral cerebral hemispheric white matter" (AR 539). The report noted, inconclusively, that the latter finding "has been described in patients with migraine headache history." (AR 540).  No diagnosis followed.  A few years later, in August 2022, Plaintiff underwent a CT scan of his brain apparently due to headaches, and the findings were unremarkable.[7] (AR 978-80; see also AR 903 (follow-up with provider)).

Plaintiff contends that the ALJ failed to "explain how the RFC limitations, as assessed, would mitigate [Plaintiff's] headaches," and he states that the ALJ "should have included RFC limitations to account for [Plaintiff's] migraine headaches, such as time off-task or increased absenteeism during a migraine

---

[6]Although Plaintiff indicates that this report occurred in March 2021 (Plaintiff's Brief at 7), the March 2021 treatment record he cites seems merely to reiterate Plaintiff's complaint from a "[p]ast visit" (see AR 526-27), as does another treatment record from a few months earlier, in January 2021 (see AR 531).  Plaintiff's report about head pain to Dr. Luthra seems to have occurred in an earlier visit, in October 2019 (see AR 535), a couple months before Plaintiff's received a brain MRI at the request of Dr. Luthra (see AR 537, 539-40).

[7]Plaintiff's treating provider, Dr. Manzoor Kazi, M.D., had referred him for the scan the previous month, July 2022, after Plaintiff complained of "severe dizziness, fainting, and loss of balance" that had been "going on for months." (AR 908-09).  When the results came back normal, Dr. Kazi ordered an MRI of the brain (AR 903), but the record here contains no reference to the results of that scan.

10

event." (Plaintiff's Reply at 3). However, assuming that Plaintiff's headaches can be attributed to a medically determinable impairment, Plaintiff does not identify any evidence suggesting that they would cause him to be off task or absent or that they limit his functional abilities in any respect. Aside from the evidence noted above, only a few medical records even mention that Plaintiff has experienced headaches, and these contain no details about the nature or extent of the problem. (See AR 523, 529, 534, 537, 542). Many other records reflect that Plaintiff did not have headaches. (See AR 245, 271, 282, 382, 391, 400, 407, 409, 418, 427, 436, 445, 454, 463, 472-73, 482-83, 490-91, 498-99, 506-07). Plaintiff had the burden of proving that his headaches affected his ability to perform basic work activities, and substantial evidence supports a conclusion that Plaintiff did not meet that burden.[8] See Hurter v. Astrue, 465 F. App'x 648, 652 (9th Cir. 2012) (finding no material error where ALJ failed to explicitly consider certain alleged impairments where the medical evidence provided inconclusive support that the alleged impairments affected her ability to perform basic work activities); see also, e.g., Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (ALJ's failure to list impairment at step two harmless error where ALJ accounted for any impairment-related limitations at step four); Lowery v. Colvin, 2014 WL 183892, *4 (D. Or. Jan. 14, 2014) ("In the Ninth Circuit, excluding a diagnosis from the list of severe impairments at step two is significant only if the impairment caused additional functional limitations not accounted for in the RFC assessment." (citing Lewis, 498 F.3d at 911)). Accordingly, a remand or reversal on this ground is not warranted.

///

///

---

[8] Plaintiff also fails to identify evidence that would support a finding, at step three, that Plaintiff's headaches exhibit equivalent signs and limitations to those detailed in Listing 11.02. See SSR 19-4p, 2019 WL 4169635, at *7.

**B.    The ALJ Did Not Materially Err by Finding Plaintiff Has an RFC to Perform Light Work and Is Not Disabled**

As indicated above, the ALJ determined that Plaintiff retains an RFC to perform light work (20 C.F.R. § 416.967(b)) with additional limitations. (AR 571). The agency defines light work to require "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). Although the regulations do not specify a standing or walking limitation for light work, and no standing or walking limitation is specified in the ALJ's RFC finding here, the agency has expressly held that a full range of light or medium work generally requires six hours of standing or walking in an eight-hour workday. See SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983). Thus, an RFC limitation to light work typically implies a six-hour standing/walking limitation. Plaintiff argues that the ALJ erred by failing to explain how Plaintiff is capable of satisfying this six-hour standing/walking limitation. (See Plaintiff's Brief at 9-10, 12-13; Reply at 3-4).

**1.    Pertinent Law**

As explained above, the ALJ assesses whether a claimant is disabled at steps four and five by determining the claimant's RFC, for which the ALJ must consider "all of the relevant medical and other evidence" in the record, 20 C.F.R. §§ 416.945(a)(3), 416.946(c), and must consider all of the claimant's "medically determinable impairments," including those that are not severe, 20 C.F.R. § 416.945(a)(2); Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). "[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r. of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).

At step five, the Commissioner must prove that an individual with the same RFC, age, education, and work experience as the claimant could perform the demands of work which exists in "significant numbers" in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(a)(4)(v), (g), 416.960(c); Heckler

v. Campbell, 461 U.S. 458, 461-62 (1983); see Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (describing legal framework for step five (citations omitted)). One way the Commissioner may satisfy this burden is by obtaining testimony from an impartial vocational expert about the type of work such a claimant is still able to perform, as well as the availability of related jobs in the national economy. See Gutierrez v. Colvin, 844 F.3d 804, 806-07 (9th Cir. 2016) (citation omitted); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1100-01). When a vocational expert is consulted at step five, the ALJ typically asks the vocational expert at the hearing to identify specific examples of occupations that could be performed by a hypothetical individual with the same characteristics as the claimant. Zavalin, 778 F.3d at 846 (citations omitted); Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012) (citations omitted). "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out all the limitations and restrictions of the particular claimant.'" Valentine, 574 F.3d at 690 (citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). However, it is "proper to limit a hypothetical to those impairments that are supported by substantial evidence in the record." Osenbrock, 240 F.3d at 1165. So long as the ALJ's hypothetical question included all of the claimant's limitations supported by the record, the vocational expert's responsive testimony may constitute substantial evidence of a claimant's ability to perform jobs existing in substantial numbers in the national economy. See Hill, 698 F.3d at 1161-62 (citations omitted); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) (citation omitted).

**2. Analysis**

Plaintiff contends that the record does not support a finding that he can stand or walk for six hours in an eight-hour day, and instead supports a greater standing/walking restriction, due to evidence of Plaintiff's "difficulty walking and breathing." (Plaintiff's Brief at 10). For example, as Plaintiff points out, his

treating physician, Dr. Syed F. Azam, M.D., observed at times that Plaintiff "limp[ed] when walking" (see AR 446, 474), and consistently noted that Plaintiff had a history of difficulty walking (see AR 390, 399, 407, 417, 426, 435, 444, 453, 462, 471, 481, 489, 497, 504). Plaintiff also attempts to support the need for further restrictions in standing and walking by noting that he "has consistently reported chronic pain, muscle aches, muscle weakness, and arthralgias/joint pain." (Plaintiff's Brief at 10; see AR 382, 391, 400, 409, 418, 427, 436, 445, 454). Relatedly, Dr. Luthra noted once that Plaintiff "complain[ed] that he has pain in his legs" which Plaintiff "describe[d] as a fire on the lateral aspect of [his] legs." (AR 535).

Plaintiff further argues that he needs a greater standing/walking restriction due to his COPD symptoms, as well as symptoms of nausea and low BMI. (See Plaintiff's Brief at 10). As to COPD, Plaintiff was often noted to suffer from a cough and shortness of breath. (See AR 527, 532, 535, 881, 898, 910, 917). He also often reported nausea, vomiting, constipation, and diarrhea (see AR 246, 250, 382, 391, 400, 445, 454, 463, 473, 483, 491, 499, 507, 526, 902, 910), and his BMI was consistently under 20 (see AR 362, 377, 387, 404, 423, 528, 866, 911, 918), while his medical providers found that he is malnourished (see AR 391, 400, 911) and assessed him with failure to thrive (see AR 529).

However, in determining that Plaintiff is capable of performing light work with additional restrictions, the ALJ properly considered all the evidence of record, including the evidence of Plaintiff's history of COPD and difficulty with nausea, vomiting, and diarrhea with weight loss. (See AR 571-74). The ALJ noted, among other things, that Plaintiff's "routine examinations while presenting for in-office visits throughout the period at issue were without gastrointestinal, musculoskeletal, respiratory, or other abnormalities" (AR 575; see AR 335, 365, 474, 876, 887, 911, 942). The ALJ acknowledged Plaintiff's alleged inability to walk for extended periods but found that the evidence did not support a need for

additional functional limitations, since Plaintiff had "not routinely reported deficits related to his . . . legs, as far as walking," and also testified he could walk to the store.[9] (AR 575; see AR 41). Plaintiff fails to demonstrate how these findings are undermined by any of the evidence that Plaintiff cites. Indeed, while Plaintiff sometimes experienced shortness of breath, he also frequently denied this symptom (see AR 246, 250, 271, 382, 391, 400, 409, 418, 427, 436, 445, 454, 463, 473, 483, 491, 499, 507, 872, 884, 886, 892, 902, 908), and several records also reflect that Plaintiff "report[ed] no muscle aches, no muscle weakness, no arthralgias/joint pain" (see AR 383, 491, 499, 507). There is ample medical evidence in the record to support a finding that Plaintiff can stand or walk for up to six hours in an eight-hour workday.

Plaintiff additionally contends that the ALJ failed to properly support the six-hour standing/walking limitation with an expert medical opinion. (See Plaintiff's Brief at 12-13). As Plaintiff points out, the only medical opinion that limited Plaintiff to six hours of standing or walking, that of consultative examiner Dr. Azizollah Karamlou, M.D., is contradictory. (See Plaintiff's Brief at 12; AR 544-54). Dr. Karamlou examined Plaintiff on September 30, 2021, and provided his assessment in two portions – a five-page typewritten report (see AR 544-48) and a standardized check-box form evaluation (see AR 548-54). In the typewritten report, Dr. Karamlou wrote that Plaintiff "is able to walk and stand for six hours out of an eight-hour workday" and "is able to sit for six hours out of an eight-hour workday," among other assessed limitations. (AR 547). On the form portion, however, Dr. Karamlou checked boxes indicating that Plaintiff can stand

///

---

[9] The ALJ noted, moreover, that while Plaintiff apparently used a cane for a "short period" in 2022, during which there were also "isolated reports of unsteadiness," Plaintiff did not testify at the hearing that he needed a cane, and many other reports indicated a normal gait without assistive device. (AR 576; see AR 365, 446, 474, 529, 534, 537, 545, 942, 961).

for *four* hours, walk for *four* hours, and sit for six hours during an eight-hour day. (AR 550).

The ALJ found Dr. Karamlou's overall medical opinion "somewhat persuasive," and specifically noted that the typewritten portion (which the ALJ called the "narrative opinion"), was supported by Dr. Karamlou's "relatively normal examination" and "consistent with the record as a whole, where there are many similar examinations."[10] (AR 576). The ALJ thus expressly included in the RFC the "exertional, postural, and environmental limitations Dr. Karamlou assessed" at the end of that typewritten (or "narrative") portion. (AR 576; see AR 547-48). The ALJ then remarked, on the other hand, that some of the opinions that Dr. Karamlou offered on the "form" portion of the assessment "are different," and the differences were "unpersuasive," as they were not supported by Dr. Karamlou's form opinion, which (unlike the typewritten portion) provided no explanations or findings to substantiate the restrictions, and was also inconsistent with the overall evidence as discussed in the ALJ's decision. (AR 576-77). The ALJ thus stated that Plaintiff's RFC "appears more in line with" Dr. Karamlou's typewritten opinion (which contained the six-hour standing/walking limitation), and "not the unexplained form opinion." (AR 577).

Plaintiff argues that the ALJ failed to properly reconcile Dr. Karamlou's two conflicting assessments of Plaintiff's standing/walking ability. (Plaintiff's Brief at 12). Plaintiff suggests that doing so required the assistance of a medical

---

[10]For claims filed after March 27, 2017 (such as Plaintiff's claim), ALJs must determine which medical opinions are the most "persuasive" by focusing on several factors, the most important of which are supportability and consistency. See 20 C.F.R. § 416.920c(a). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence,'" while consistency refers to "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" Woods v. Kijakazi, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1), (2)); see also 20 C.F.R. § 416.920c(c)(1), (2). ALJs are required to explain how they considered these two factors. See 20 C.F.R. § 416.920c(b).

expert, which the ALJ did not obtain.  (Plaintiff's Brief at 12).  However, although the ALJ certainly could have given a clearer explanation for why she found the six-hour standing/walking limitation particularly more persuasive than the four-hour restriction, the ALJ's explanation is at least adequate under the applicable standard.  Plaintiff fails to demonstrate that the circumstances triggered the ALJ's duty to develop the record.  See Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.").

     Alternatively, even if the ALJ erred by failing to further support the finding that Plaintiff can stand or walk for six hours, rather than only four hours, or to further develop the record on this issue, such error would be harmless.  As Defendant points out, the vocational expert also testified to several representative occupations at the sedentary level in response to the ALJ's hypothetical, which would also result in a finding that Plaintiff was not disabled.  (Defendant's Brief at 7; see AR 600-01).  Sedentary work generally requires no more than two hours of standing or walking in an eight-hour workday.  See SSR 83-10, 1983 WL 31251, at *5 ("Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. . . . Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.").  Specifically, after posing a hypothetical for light work which contained all the restrictions in the RFC assessment, to which the vocational expert responded by listing several jobs existing in substantial numbers in the national economy (AR 599-600; see also AR 571, 577-78), the ALJ next asked whether there were also jobs for a person with the same restrictions but at the sedentary level (AR 600).  The vocational expert testified that such person could perform work as a lens

inserter (11,000 jobs nationally), a bench assembler (12,500 jobs nationally), and jewelry preparer (10,000 jobs nationally). (AR 600-01). There is no dispute that this would constitute a significant number of jobs in the national economy, which would suffice to support the ALJ's finding at step five. See, e.g., Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (64,000 jobs nationally was significant).

Plaintiff contends that the vocational expert's testimony regarding sedentary work does not suffice because "when the evidence is properly considered, the ALJ may not have found that [Plaintiff] is capable of the physical requirements of sedentary work." (Plaintiff's Reply at 4). However, Plaintiff has not identified any evidence in the record that would support a finding that Plaintiff was incapable of performing sedentary work. Accordingly, Plaintiff fails to demonstrate any material error in the ALJ's decision. See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (An ALJ's error is harmless "when it is clear from the record . . . that it was 'inconsequential to the ultimate nondisability determination.'" (citation omitted)); see also Graham v. Comm'r of Soc. Sec., 441 F. App'x 487, 489 (9th Cir. 2011) (error was harmless where, even if ALJ had limited claimant to sedentary work, the vocational expert also identified sedentary jobs that existed in substantial numbers that claimant could perform with his RFC); Willard v. Saul, 2021 WL 2073737, at *7 (E.D. Cal. May 24, 2021) (same); Jenkins v. Astrue, 815 F. Supp. 2d 1145, 1154 (D. Or. 2011) (same), aff'd, 497 F. App'x 757 (9th Cir. 2012).

## V.  CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: October 1, 2025

/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE